Hart<br>*v.*<br>Tyler.

## ICHABOD B. MORRILL *versus* MOSES BROWN, Principal, and ENOCH FLANDERS, Trustee.

In a process of foreign attachment, it appeared that a sum of money, which was due to the principal and trustee severally, was paid to them in checks on banks; that the principal told the trustee to take the checks and get the money for them, and that they could afterwards divide the money; and that the trustee accordingly obtained from the banks the amount of the checks in bank-bills; but before any division was made, the trustee was summoned under the trustee process. It was *held* that the trustee was chargeable.

BY the answer of the trustee it appeared, that in the summer of 1832, the principal and trustee were employed by J. B. Lord and others, of Portsmouth, N. H., to caulk some vessels building in that town ; that on November 16, 1832, the principal and trustee determined to settle their accounts with their employers, receive payment and return to their homes in Salisbury, in this county ; that, on the same day, they had their accounts made out separately, they not being in partnership, and went to the counting-room of their employers to receive payment ; that their employers having only money enough on hand to pay a portion of their accounts, the balance was paid by three checks on different banks in Portsmouth ; that the principal told the trustee to take the checks and get the money for them, and that they could divide the money

15 *

Morrill
v.
Brown
& Tr.

when they arrived home ; that the proposal was assented to ; that the trustee accordingly went to the banks and received the money, which amounted to the sum of $92 ; that they returned in company to Salisbury ; that after their arrival they parted, and the principal agreed to come the next morning and receive his portion of the money, which amounted to the sum of $46 ; but that before it was paid over to the principal, the trustee was summoned under the trustee process, at the suit of the plaintiff.

It was agreed by the parties, that the amount of the checks was received by the trustee in bank-bills.

In the Court of Common Pleas, the trustee was held to be chargeable ; and he thereupon filed exceptions to the decision of that court.

*Nov 7th*

*Newcomb*, for the plaintiff, to the point, that bank-bills are money, and therefore are attachable, so that even when *specifically* placed in the hands of a third person, they may be held under the trustee process, cited *The King* v. *Webb*, 2 Shower, 166 ; Dalton's Sheriff, 145 ; *Turner* v. *Fendall*, 1 Cranch, 117 ; *Spencer* v. *Blaisdell*, 4 N. Hamp. R. 198 ; *Handy* v. *Dobbin*, 12 Johns. R. 220 ; *Holmes* v. *Nuncaster*, 12 Johns. R. 395 ; to the point, that whenever an agent receives promissory notes, bank-bills, or any thing which is *payable in money*, in payment of a debt due to the principal, the agent is accountable, not for the bank-bills specifically, but *for so much money*, he cited *Pickard* v. *Bankes*, 13 East, 20 ; *Floyd* v. *Day*, 3 Mass. R. 403 ; *Arms* v. *Ashley*, 4 Pick. 471 ; *Beardsley* v. *Root*, 11 Johns. R. 464 ; to the point, that an action for money had and received, lies for bank-bills unlawfully received, he cited *Mason* v. *Waite*, 17 Mass. R. 560 ; to the point, that where a person has *money* in his hands belonging to another, he is liable under the trustee process to pay over the money *before* a demand, even although he would not have been liable directly to the princi pal, till *after* a demand, he cited *Coburn* v. *Ansart*, 3 Mass R. 319 ; *Staples* v. *Staples*, 4 Greenl. 532.

*Cross*, for the trustee. The process of foreign attachment is wholly the creation of *St*. 1794, *c.* 65, and of course the subjects on which it acts, must depend on the words of that

statute. Those words are "goods, effects or credits." Now bank-bills are not goods, nor effects, nor credits; and of course cannot be reached by the trustee process. *Maine F. & M. Ins. Co.* v. *Weeks*, 7 Mass. R. 438; *Perry* v. *Coates*, 9 Mass. R. 537; *Dickinson* v. *Strong*, 4 Pick. 57; *Andrews* v. *Ludlow*, 5 Pick. 28; *Lupton* v. *Cutter*, 8 Pick. 298.

Supposing money to be attachable by the common process of attachment, it does not necessarily follow, that it is liable under the process of foreign attachment. In the one case, the writ directs the officer to attach goods or *estate*; in the other, goods, effects or credits. Now *estate* is a word of much larger import than either of the others. It comprehends one's whole property. 4 Dane's Abr. 499. But *goods*, *effects* and *credits* are words of limited signification. The word *estate* may comprehend money then; and *goods*, *effects*, and *credits* may not.

But taking it for granted, that whatever may be seized by attachment or on execution, according to the ordinary process, is also liable to the trustee process, it is not clear that money is attachable. *Knight* v. *Criddle*, 9 East, 48; *Armistead* v. *Philpot*, 1 Doug. 231; *Fieldhouse* v. *Croft*, 4 East, 510; *Willows* v. *Ball*, 5 Bos. & Pul. 376; *Coppell* v. *Smith*, 4 T. R. 312; *Caila* v. *Elgood*, 2 Dowl. & Ryl. 193; *Knowlton* v. *Bartlett*, 1 Pick. 271. [But see Revised Stat. *c.* 27, § 20, 21.]

Even if money is attachable, bank-bills are not money. No man can be forced to take them as money. They are not a legal tender. *Hallowell and Augusta Bank* v. *Howard*, 13 Mass. R. 235. They are not even a universal measure of value. Within certain narrow limits, bills of a particular kind are equivalent to specie; but beyond their sphere of ordinary circulation, they depreciate in value.

The trustee in the present case, being, in the terms of the civil law, a *mandatary to carry*, was responsible only in case of *gross neglect* or a *breach of good faith*. Jones on Bailm. 140. He did not undertake to procure money for the checks. If he had ignorantly received spurious bills, he would not have been liable to the principal for *money*, but only for what he received in exchange. And herein lies the essential dif-

Morrill
v.
Brown
& Tr.

ference between this case and the cases of *Floyd* v. *Day*, *Arms* v. *Ashley*, and *Staples* v. *Staples*, which are cited by the plaintiff. In those cases, the agents were bound to exercise a higher degree of diligence. They are cases where by a special agreement, or by an agreement implied in law from the nature of their occupations, and for an adequate compensation, the agents undertook to procure, not bills, but money.

*Nov. 8th.*

SHAW C. J. delivered the opinion of the Court. The trustee is chargeable on his answer. By collecting the checks he became answerable to Brown for the amount of his share of the money. Had he received bad bills to the amount of the whole or any part, if he had acted in good faith and with reasonable diligence, *pro tanto* he would not have been a debtor to his principal, and on showing that matter in his answer, to the same extent he would have been discharged. Precisely the same rule would have been applied, had he received American gold or dollars and some had proved counterfeit. He would be discharged therefore, not upon the ground of his having received bank notes instead of money, but on account of the nature of his agency, and the legal responsibility arising from it.

But the distinction in this case is, that the trustee having cash drafts, in which the principal was interested, collected them, in a medium passing by common consent as cash, and by him received without objection, as and for money. There upon he became instantly a debtor of the principal to the amount, and an action for money had and received might have been maintained against him for it by the principal.

The statute contemplates two distinct species of property, attachable by this process, goods and credits. The trustee, in the language of the statute, holds a credit, when he is a debtor to the principal, and the execution implies, that he is to pay over in money. He is to make the payment to the creditor of the principal, which, but for the intervention of the attachment, he was bound to make to the principal himself. But if he holds goods, they are to be delivered to the officer, having the execution, to be sold like any other attached property. This distinction is well marked in one of the cases cited in the argument, which was very able and ingenious on

both sides. *Maine F. & M. Ins. Co.* v. *Weeks*, 7 Mass. R. 438. To charge a trustee, in general, the principal must have a cause of action against him, or he must hold goods or chattels capable of being seized on execution. To bring the trustee within the former case, there must be a subsisting cause of action against him ; he must be indebted to the principal. This is the true test of his liability under this branch of the statute.

When an agent to collect money, receives bank notes without objection and as money, he becomes liable for money. So, if he take a note payable to himself. *Floyd* v. *Day*, 3 Mass. R. 403. So, if he sue in his own name, and levy his execution on real estate. *Randall* v. *Rich*, 11 Mass. R. 494. Because in legal contemplation he collects, receives, and discharges the cash debt of his principal.

The principal cases in which it was determined that a trustee could not be charged in consequence of holding promissory notes, or bank notes, are quite distinguishable from this. *Maine F. & M. Ins. Co.* v. *Weeks*, 7 Mass. R. 438 ; *Perry* v. *Coates*, 9 Mass. R. 537. The notes were in both cases held specifically for the principal and the trustee was the depository, not the debtor, of the principal. In this case, there was a debt due from the trustee to the principal, in money, payable immediately and upon no contingency, a present subsisting cause of action ; and therefore the Court are of opinion, that the trustee must be charged.